# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TIMOTHY L. HOELLER,<br><br>      Plaintiff,<br><br>v.<br><br>CARROLL UNIVERSITY, CATHERINE JORGENS, CINDY GNADINGER, and JANE DOE, *sued as Unnamed Secretary in Provost's Office*,<br><br>      Defendants. | Case No. 19-CV-850-JPS<br><br><br>**ORDER** |

    This case comes before the Court on Plaintiff's allegations that the above-named Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.* and Wisconsin state law when they terminated him from his position at Carroll University. (Docket #1). Defendant Carroll University (hereinafter "Defendant"), the only defendant to have appeared in the case, filed a motion to dismiss. (Docket #7). The motion to dismiss is now fully briefed.[1] For the reasons explained below, the motion will be granted, and the case will be dismissed without leave to amend. Plaintiff's federal law claims for employment discrimination on the basis of his termination and failure to be rehired due

---

[1] The first page of Plaintiff's response is titled, "Reply to Brief of Defendant Carroll University in Support of its motion to Dismiss the Complaint," but the second page is titled, "Amended Complaint – Introduction." (Docket #16 at 1–2). However, the remainder of the filing reads as a response to the Defendant's motion to dismiss. Accordingly, the Court has construed this filing as a response to the motion to dismiss.

to his mental disability are dismissed with prejudice because he failed to timely file both the Equal Employment Opportunity Commission ("EEOC") charges and this case in federal court. Plaintiff's failure to accommodate claim will be dismissed without prejudice so that he can exhaust that claim with the EEOC, although, as explained below, the claim is likely to be dismissed as untimely. Finally, Plaintiff's state law claims will be dismissed without prejudice; he is free to bring them in state court.

1. **LEGAL STANDARD**

Defendant has moved to dismiss the complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When faced with a jurisdictional challenge, the court accepts as true the well-pleaded factual allegations found in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). In this context, the court may also consider extrinsic evidence adduced by the parties. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003).

Defendant has also moved to dismiss the complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak v. City of Chi.*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.* at 480–81.

The Court is obliged to give a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

2.     **RELEVANT ALLEGATIONS**

In January 2017, Plaintiff was awarded a position as an adjunct faculty member at Carroll University, where he taught a four-credit physics course. On April 25, 2017, near the end of the semester, he was terminated from this position. At that juncture, the department chair told him that "they had their own people" to teach. (Docket #1-1 at 1). Plaintiff believes that this implied that he was "different." *Id.* Plaintiff suffers from bipolar disorder.

Plaintiff contends that if he had performance issues, then he should have been afforded an accommodation. When he re-applied to teach at Carroll University in January 2018, he was met with a lawsuit for harassment. News outlets following the case published information about Plaintiff, which he believes is tortious. For example, Plaintiff contends that the news "has published information about [Plaintiff's] lack of acceptable teaching abilities per Carrol[l]'s subcontracted lawyers releasing that information which is a trade secret in the Harassment and Injunction Cause." (Docket #1-1 at 2).

Plaintiff explains that he took the following steps to exhaust his administrative remedies: "On July 20, 201[8] the EEOC received a hand-written complaint from me via U.S. Mail.[2] By February 21, 2019 a typed

---

[2]Plaintiff wrote that he submitted a complaint on "July 20, 2019," but he seems to have meant July 20, 2018. *See* (Docket #17 at 5). Additionally, although Plaintiff characterizes this submission as a complaint, it appears to have been an initial inquiry. *Id.*

complaint was sent from the EEOC and on February 25, 2019, the revised complaint form was signe[d]-off." (Docket #1 at 5). The EEOC issued a Notice of Right to Sue letter on March 3, 2019. *Id.* The ninetieth day after receiving the Right to Sue letter was June 1, 2019. Plaintiff filed this lawsuit on June 7, 2019.

Plaintiff seeks the following relief: discovery from Carroll University, "release of trade secrets [i.e. privileged information] with defamation of the character of the Plaintiff, supposed performance problems, and existence or not of a teacher evaluation process with wrongful termination." *Id.* at 6. This will allow him to "pin-point the discrimination and intentional tortious actions of Carroll University[.]" He seeks compensatory and punitive damages, as well as removal of online information about him. He further contends that the news coverage of his various lawsuits, as well as the public court filings (which are available online) are tortious, and seeks to seal information related to his state and federal court proceedings.

3. ANALYSIS

    3.1 ADA Claims

        3.1.1 Untimely EEOC Complaint and Federal Suit

Before filing a lawsuit alleging claims under the ADA, an individual must exhaust his administrative remedies by: (1) filing a timely charge of discrimination with the EEOC within 300 days of the allegedly wrongful treatment; and (2) filing suit within ninety days of receiving a right to sue letter from the EEOC with respect to the timely charge. *See Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 836 (7th Cir. 2008); *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 527 (7th Cir. 2003); *Zugay v. Progressive Care, S.C.*, 180

F.3d 901, 902 (7th Cir. 1999); *see also* 42 U.S.C. § 2000e-5(e)(1), 2000e-5(f)(1); 42 U.S.C. § 12117.

Plaintiff alleges that discriminating statements were made to him on the day that he was wrongfully terminated from Carroll University. *See* (Docket #1-1 at 1) (referring to Carroll University dismissing him because "they had their own people" to teach his course, which made Plaintiff feel like he was fired for being "different"); *see also* (Docket #16-1 at 10) (email from May 3, 2017 recounting Plaintiff's termination on April 25, 2017, and his objection to the termination). He further alleges that his application for re-hire was wrongfully denied in late January of 2018, with a final incident of discrimination occurring on February 2, 2018. (Docket #1 at 4).[3] He had 300 days to file a timely charge of discrimination with the EEOC. However, he filed his charge of discrimination on February 25, 2019, which was 392 days after the date of the most recent incident of discrimination. (Docket #1-1 at 45). His EEOC charge was therefore untimely.

Plaintiff explains that he was in a mental health institution and in jail between February 23, 2018 and August 30, 2018, and argues that because of this, he should be afforded some leniency in the 300-day time period. (Docket #16 at 14). However, as Defendant points out, Plaintiff communicated with the EEOC during this time in order to request a complaint form, *see id.* at 9, which compels the conclusion that he was capable of filing an EEOC complaint during that time, as well.

---

[3]In this section of the complaint, Plaintiff also states that a discriminatory action occurred on "January 29, 2019," but this appears to be a typo in light of the fact that the rest of the complaint discusses events that occurred in January 2018, not January 2019. *See* (Docket #8 at 5 n.4).

Plaintiff also contends that the EEOC communication that he made while he was institutionalized constituted a complaint. *See id*. As previously stated, the communication appears to have been a request for a complaint form, which, Defendant argues, is "not treat[ed] . . .as a charge of discrimination" because such requests are "generic and unspecific to alert the EEOC that unlawful discrimination has occurred." (Docket #19 at 3 (citing Docket #17 at 5–6) (U.S. EEOC response to Senator Tammy Baldwin's inquiry on behalf of Timothy Hoeller)). It is clear that there were several lapses in communication with Plaintiff while he attempted to file his EEOC charge, and not all of them were his fault. *See e.g.* (Docket #17 at 5–6) (recounting EEOC's mistakes in sending Plaintiff's information to the wrong address and the wrong investigator). Nevertheless, the EEOC ultimately determined that the charge was untimely. (Docket #1-2 at 41).

Even if Plaintiff had timely filed the EEOC charge, these claims would be dismissed because he failed to file his federal lawsuit within ninety days of receiving the Right to Sue letter. The EEOC issued the Right to Sue letter on March 1, 2019. *Id*. Plaintiff received the letter on March 3, 2019. (Docket #1 at 5). The letter warned Plaintiff that he had ninety days in which to file a lawsuit or his "right to sue based on this charge will be lost." (Docket #1-2 at 41). This would have given Plaintiff until June 1, 2019 to file a lawsuit in federal court. This case was not filed until June 7, 2019. (Docket #1).

Equitable tolling does not excuse Plaintiff for his failure to comply with the ninety-day deadline. Equitable tolling "is reserved for situations in which the claimant 'has made a good faith error (*e.g.*, brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time.'" *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th

Cir. 2001) (quoting *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1314 (7th Cir. 1984)). This form of relief is "extended. . .only sparingly," and in situations where a plaintiff has "actively pursued his judicial remedies by filing an ineffective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). Here, Plaintiff has not alleged that he mistakenly filed his pleading before the wrong tribunal, or that he was somehow tricked by Carroll University into waiting an extra week to file his complaint. Accordingly, equitable tolling does not apply.

Nor does the fact that Plaintiff is *pro se* and suffering from bipolar disorder warrant an extension to the time period. "*Pro se* litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines." *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994); *Portillo v. Zebra Techs. Corp.*, 154 F. App'x 505, 507 (7th Cir. 2005) (affirming a dismissal when *pro se* plaintiff filed her complaint ninety-one days after receiving the EEOC's Right to Sue letter). Additionally, in cases of mental illness, equitable tolling "is permitted only upon a strong showing that the medical condition *actually* prevented the complaining party from satisfying the limitations requirement." *Gray v. Potter*, 115 F. App'x 891, 894 (7th Cir. 2004) (noting that it was "clear from the pleadings that [the plaintiff's] mental and physical illnesses, however taxing, did not actually prevent her from pursuing her legal rights" in light of her "aggressive quest" for the reinstatement of her job).

Plaintiff has not made any showing that his mental disability caused him to be a week late in filing his lawsuit—he has not alleged, for example,

that he was incapacitated during that week, or that his mental disability caused him to believe that the filing deadline was later. To the contrary, the pleadings in this case suggest that Plaintiff has been able to file several lawsuits since he was terminated. Accordingly, this is not a basis on which the Court can excuse him from the filing deadline. For these reasons, Plaintiff's claims under the ADA must be dismissed as untimely. They will be dismissed without leave to amend because, having determined that Plaintiff's claims are untimely, any further amendment would be futile. *Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993) (observing that "the court should not allow the plaintiff to amend his complaint when to do so would be futile") (citations omitted).

### 3.2 Failure to Accommodate Claim

#### 3.2.1 Failure to Exhaust

Plaintiff alleges that he should have been granted an accommodation in light of his mental disability. Defendant counters that this claim was not included in the initial EEOC complaint, and therefore has not been exhausted. As explained below, the claim will be dismissed because Plaintiff has failed to exhaust the EEOC requirements before filing in federal court.

It is well-settled that "[a]n aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). To discern the scope of the EEOC charges, the Seventh Circuit instructs district courts to ask, "what EEOC investigation could reasonably be expected to grow from the original complaint[?]" *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999) (citation and quotations omitted). "The complaint filed in the

district court and the charge filed with the EEOC must, at a minimum, describe the same circumstances and participants." *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005). Further, "[w]hen an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994).

In performing this inquiry, courts should not punish technical defects like a failure to check a particular box on an EEOC form; rather, they must view the charge as a whole and decide whether it contains "facts that would reasonably alert the EEOC, or [the employer] for that matter, to the possibility of [a particular theory of] discrimination." *Ajayi*, 336 F.3d at 528. This is consistent with the purpose of the exhaustion requirement, which was created to give the employer "some warning of the [complained-of] conduct" and afford "the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Cheek*, 31 F.3d at 500.

Plaintiff's original complaint alleged only disability discrimination, not failure to accommodate. (Docket #1-2 at 45). Specifically, he stated that

> On or about April 25, 2017, I was released from employment by the Respondent. In January 2018, I applied to be re-hired with the Respondent as an adjunct faculty member. On February 26, 2018, the Respondent obtained a temporary order of injunction against me.
>
> I believe that the Respondent has discriminated against me on the basis of my disability and retaliation for engaging in a protected activity,

> in violation of the Americans with Disabilities Act of 1990, including section 704(a), as amended.

*Id.* These allegations do not give rise to the inference that an accommodation should have been made, or otherwise put the employer on notice that Plaintiff would later complain that an accommodation should have been offered. In short, Plaintiff has not exhausted this claim.

On August 19, 2019, Plaintiff gave notice to the Court that he filed amended EEOC charges in an attempt to rectify the lack of exhaustion. (Docket #18). His new EEOC charges include claims for failure to accommodate and for religious discrimination. *Id.* The EEOC complaint was filed on August 17, 2019. *Id.* at 5. These charges are also untimely, for the reasons explained in Section 3.1.1, *supra*. According to the new charges, the conduct that Plaintiff complains of occurred, at the absolute possible latest, on January 24, 2018, when he was not re-hired by Carroll University. *Id.* at 2. Plaintiff filed his EEOC charges well beyond the 300-day limit imposed by law. *See* 42 U.S.C. §§ 2000e-5(e)(1); 42 U.S.C. § 12117. Accordingly, these amended charges do not affect the Court's decision.

### 3.3 Wisconsin State Law Claims

Plaintiff also brings various claims under Wisconsin state law for defamation and infringement of his rights to privacy. Having found that Plaintiff's federal questions are improperly before the federal court, and in light of the fact that the parties are both citizens of Wisconsin, the Court declines to exercise supplemental jurisdiction over these claims. 28 U.S.C. § 1367(c)(3).

Incidentally, it appears to the Court that many, if not all of these claims, would be barred from federal review. A plaintiff may not use the

federal courts to collaterally attack the outcome of a state court proceeding in lieu of an appeal in the state court. *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415–16 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). Plaintiff states, in the opening portion of his opposition to the motion to dismiss, that "this Court is advised that the Court is acting as a Transferee until further notice that state court can accept some of the claims which are under appeal by the Plaintiff, the Authorities Section for which the opposing parties have not disputed encompass: [various state law tort claims]" (Docket #16 at 2); *see also id.* at 24 (referring to a "one-to-one correspondence of the elements of a violation of [Plaintiff's] privacy rights claim" filed in Wisconsin state courts). Federal courts do not sit in review of state courts, and federal courts are not to be used as "transferees" of state court litigation. Moreover, regardless of the outcome of Plaintiff's appeals in the state courts, under the *Rooker-Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). Accordingly, the Court notes that even if it had not declined to exercise supplemental jurisdiction in light of Plaintiff's dismissed federal claims, it likely would not have been able to hear these state claims.

**4. CONCLUSION**

For the reasons explained above, this case must be dismissed. The Court declines to exercise supplemental jurisdiction over the incoherently pled state law claims, many of which (if not all) appear to be barred by the *Rooker-Feldman* doctrine. Moreover, because Plaintiff's federal question claims have been deemed untimely, the Court will not allow leave to amend because such amendment would be futile—Plaintiff cannot turn back the hands of mother time.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss the complaint (Docket #7) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's federal law claims for employment discrimination be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's federal law claim for failure to accommodate be and the same is hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that the Court, pursuant to 28 U.S.C. § 1367(c), declines to exercise supplemental jurisdiction over Plaintiff's state law claims, including for violations of the Wisconsin Privacy Act and Wisconsin Fair Employment Act, defamation, and appropriation, and that Plaintiff's state law claims be and the same are hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of November, 2019.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge